## HENRY McWILLIAMS v. GEORGE H. PARHAM, JR.

(Filed 20 January, 1967.)

**1. Pleadings § 34—**

A motion to strike an entire further answer on the ground that the facts alleged therein are insufficient to constitute a defense is equivalent to a demurrer to such further answer.

**2. Master and Servant § 27—**

The doctrine of assumption of risk is applicable only when there is the contractual relationship of employee and employer existing between plaintiff and defendant.

**3. Games and Exhibitions § 5—**

In an action by a caddy to recover for injuries sustained when hit by a golf ball driven by a player following those for whom the caddy was caddying, allegations of the further answer and defense that defendant was enjoying membership privileges of the golf club, even though the allegations be construed that defendant was a member and stockholder in the club,

fail to allege a contract of employment constituting a necessary predicate for the defense of assumption of risk.

**4. Master and Servant § 27—**

The doctrine of assumption of risk extends only to those risks which are normally incident to the circumstances and does not extend to extraordinary risks or additional hazards.

**5. Games and Exhibitions § 5—**

It is customary for a golfer to cry "fore" or give other warning of his intent to drive a ball when there are other persons within the probable range of the intended flight of the ball, and the failure to give such warning is negligence, and therefore a player may not assert assumption of risk on the part of a caddy hit by a ball driven by the player without the customary warning, since the caddy cannot be held to have assumed the extraordinary risk of negligent failure of the player to observe the established rules and customs of the game.

**6. Master and Servant § 86—**

Allegations that defendant was enjoying the privileges of membership in playing on a golf course, even if such allegations be construed to mean that defendant was a member and stockholder of the club, do not show that defendant was an employer of a caddy of preceding players, G.S. 97-10.1, and do not show that defendant was "conducting" the business of the club, G.S. 97-9, and therefore such defendant is not entitled to allege the defense of immunity under the Workmen's Compensation Act in an action by the caddy to recover for injuries resulting when struck by a ball driven by defendant.

On *certiorari* to review an order of *Morris, J.,* entered at the First May 1966 Assigned Non-Jury Civil Session of Wake denying a motion to strike portions of the defendant's answer.

This is an action to recover damages for injuries sustained when the plaintiff was struck in the eye by a golf ball driven by the defendant.

The complaint alleges: At the time of the injury, the plaintiff was employed as a caddy at the Carolina Country Club in Raleigh, and was engaged in caddying for two players in a group of four which had just completed their playing of the thirteenth hole upon the golf course of the Club. These players and the plaintiff had thereupon moved away from the thirteenth green toward the fairway of the fourteenth hole, which fairway runs in an opposite direction to and parallel with that of the thirteenth hole. The defendant was then on the thirteenth driving tee, being one of a group of players following immediately after those for whom the plaintiff was caddying. When the plaintiff had walked only a few feet from the thirteenth green, and while he was within the clear view of the defendant, the defendant negligently, and without giving the plaintiff adequate and timely warning, drove a golf ball down the thir-

teenth fairway, which is only 180 yards in length. The ball struck the plaintiff in the eye and caused the permanent loss of the eye, the alleged negligence of the defendant being the proximate cause of such injury.

In his answer in chief, the defendant denies any negligence by him and alleges that the plaintiff had proceeded entirely off the fairway of the thirteenth green and into the "rough" between the thirteenth and fourteenth fairways. He further alleges that the ball driven by him hooked sharply to his left, fell into the "rough," and bounced and struck the plaintiff. These allegations are not involved in the questions now presented for review.

As a first further answer and defense, the defendant pleads contributory negligence by the plaintiff. These allegations are not involved in the questions now presented for review.

For a second further answer and defense, the defendant alleged that, at the time of his injury, the plaintiff was working "in his employment as a caddy *for* the Carolina Country Club"; that he was "working as an employee *of* said Carolina Country Club and said employment was for the use, benefit and enjoyment of persons playing golf on the golf course of said club, including the defendant"; that he was "an experienced caddy employed *by* said club," having been so employed more than 20 years, and that he was thoroughly familiar with the golf course of the Club and with the game of golf, its rules and the hazards and dangers incidental to the game. (Emphasis added.) It is alleged that the risks of such employment were obvious to and well known to the plaintiff and were assumed by him, and that the injury of which the plaintiff complains arose from a risk incident to such employment, which risk he assumed when he entered and continued such employment. This assumption of risk by the plaintiff is specifically pleaded in bar of his right of recovery in this action.

For a third further answer and defense, the defendant alleges that the plaintiff was an employee *of* the Carolina Country Club, a corporation, which operated a golf course in order to provide for the members of the Club and their guests a place of resort for their enjoyment and amusement, and the "plaintiff was an employee of said corporation and was acting within the terms and scope of his employment as a caddy for said corporation, its members and guests, and was acting in furtherance of the business of the corporation at all times alleged in the complaint"; that the plaintiff and the Club had elected to accept and be governed by the provisions of the North Carolina Workmen's Compensation Act, and the Club had procured a policy of Workmen's Compensation insurance. It is further alleged that the North Carolina Industrial Commission issued an

award of compensation and medical benefits to the plaintiff pursuant to the Workmen's Compensation Act, which benefits have been or will be paid to the plaintiff by the Club's insurance carrier. It is alleged that the defendant is immune from liability in this action under the provisions of the Workmen's Compensation Act, and specifically G.S. 97-9 and G.S. 97-10 (now G.S. 97-10.1 to 97-10.3) "for the reason that at the time of said accident defendant was playing golf on the golf course operated by the Carolina Country Club Company and in so doing was engaged in furtherance of the business of the Company."

The plaintiff moved to strike, in their entirety, the second and third further answers and defenses. He alleges that the second further answer and defense does not constitute a defense to the plaintiff's cause of action "because, among other reasons, there is and was no contractual relationship existing between plaintiff and defendant, as evidenced by the pleadings." He contends that the third further answer and defense is irrelevant and does not constitute a defense to his cause of action "because, among other reasons, the defendant was not conducting the business of plaintiff's employer within the meaning of that defense as set forth in Chapter 97, particularly G.S. 97-9, of the General Statutes of North Carolina, as evidenced by the pleadings."

The superior court concluded that the allegations of the second and third further answers and defenses are proper allegations and that proof thereof would constitute a complete bar to the plaintiff's right to recover in this action. It, therefore, overruled the motion in its entirety.

The plaintiff petitioned for *certiorari* to review this denial of its motion to strike, which petition was granted.

*Joyner & Howison for plaintiff appellant.*
*Maupin, Taylor & Ellis for defendant appellee.*

LAKE, J. The motion to strike is directed to the entire second further answer and to the entire third further answer for the reason, in each instance, that the allegations therein contained do not constitute a defense to the cause of action alleged in the complaint. The motion is, therefore, equivalent to a demurrer to each such further answer. *Cecil v. R. R.*, 266 N.C. 728, 147 S.E. 2d 223; *Galloway v. Lawrence*, 263 N.C. 433, 139 S.E. 2d 761; *Williams v. Hunter*, 257 N.C. 754, 127 S.E. 2d 546.

In each instance the motion should have been allowed.
The defense which the second further answer purports to allege

is the assumption by the plaintiff of the risk that he would be so injured. It is well established in this jurisdiction that assumption of risk is not available as a defense to one not in a contractual relationship to the plaintiff. *Clark v. Freight Carriers*, 247 N.C. 705, 102 S.E. 2d 252; *Gilreath v. Silverman*, 245 N.C. 51, 95 S.E. 2d 107; *Goode v. Barton*, 238 N.C. 492, 78 S.E. 2d 398; *Broughton v. Oil Co.*, 201 N.C. 282, 159 S.E. 321. The distinction between the defense of contributory negligence, which the defendant has alleged in his first further answer and defense, and which is in no way affected by our decision upon the matters now before us, and the defense of assumption of the risk is clearly drawn in *Cobia v. R. R.*, 188 N.C. 487, 125 S.E. 18, and in *Horton v. R. R.*, 175 N.C. 472, 95 S.E. 883.

The defendant, in his brief, recognizing that "the defense of assumption of risk is one growing out of the contract of employment," relies on his allegation in the second further answer that "any injury sustained by the plaintiff while he was in the employment of the Carolina Country Club and the patrons of its golf course as a caddy" was sustained in an employment, the risks incident to which were obvious and well known to the plaintiff. This is a far cry from an allegation that the plaintiff was employed by the defendant or that there was any contractual relationship between them. On the contrary, the defendant's own allegations both in the second and in the third further answer show that the plaintiff's employment was "of" the Club, "by" the Club and "for" the Club. The Club is a corporation. It appears from the answer, itself, that the plaintiff was not caddying for the defendant but for players in a group entirely separate and apart from the defendant and his companions. Nowhere in the pleadings is the relationship of the defendant to the Carolina Country Club set forth. The only reference to this relationship is the admission, in the answer in chief, of the allegation in the complaint that when the event in question occurred, "the defendant was enjoying membership privileges of the Carolina Country Club and was playing golf with another person on said course." Thus, it does not appear that the defendant was even a member of the Club, but if he was a member of the corporation, which employed the plaintiff, this would not make him a party to that contractual relationship. Consequently, it appears upon the face of the answer, itself, that a prerequisite to the defense of assumption of the risk is lacking.

Furthermore, when the necessary relationship between the parties is shown, the doctrine of assumption of risk extends only to those risks which are normally incident to the occupation in which the plaintiff engages. Extraordinary risks, including additional hazards

caused by the negligence of the employer, or of others upon the employer's premises, are not assumed by the employee. See *Cobia v. R. R., supra.*

It is a well recognized and established custom among golfers to give warning by crying "Fore," or some similar exclamation, prior to attempting to drive a golf ball into the vicinity of another person on the course who does not appear to be aware that such a drive is about to be made, whether such other person be another player, a caddy or a spectator. A driven golf ball travels at high speed and can inflict serious bodily injury, as in this instance. To drive a golf ball toward such a person, who is within probable range of the intended flight of the ball, without giving such warning, is negligence. *Boynton v. Ryan,* 257 F. 2d 70; *Miller v. Rollings, Fla.,* 56 So. 2d 137; *Stober v. Embry,* 243 Ky. 117, 47 S.W. 2d 921; *Page v. Unterreiner,* Mo. App., 106 S.W. 2d 528; *Toohey v. Webster,* 97 N.J.L. 545, 117 Atl. 838, 23 A.L.R. 440; *Povanda v. Powers,* 152 Misc. 75, 272 N.Y.S. 619. The plaintiff, whom the answer alleges to have been well acquainted with the customs and rules of the game, was entitled to assume that players in the party following that for whose members he was caddying, would observe such custom. He cannot, therefore, be held to have assumed the risk of injury through the negligent failure of such a player to give warning of his intent to drive a ball into the plaintiff's vicinity, even if the other prerequisites to the application of the doctrine of assumption of risk be present. *Toohey v. Webster, supra; Povanda v. Powers, supra; Getz v. Freed,* 377 Pa. 480, 105 Atl. 2d 102.

It is well known to caddies, and to those who frequent golf courses, that skillful players occasionally, and players of average skill frequently, strike the ball with care and then find, to their dismay, that it "hooks" to the left or "slices" to the right, or otherwise departs substantially from the intended course of flight. As between a caddy and his employer, the caddy may, therefore, be held to assume the risk of injury from such a drive, but he cannot be held to assume, even as to his employer, the risk of injury due to the negligent failure of a player to observe the established rules and customs of the game. *Biskup v. Hoffman,* 220 Mo. App. 542, 287 S.W. 865; *Toohey v. Webster, supra; Povanda v. Powers, supra; Getz v. Freed, supra.*

In the present case, the cause of action alleged in the complaint is one for damages proximately caused by the negligent failure of the defendant to give the customary warning before driving the ball in the direction of the plaintiff, who was then within range of the drive and unaware of the intent of the defendant to drive. Thus, the

second further answer does not state facts which would constitute a defense to this alleged cause of action, even if the answer had alleged a contractual relationship between the parties.

The third further answer purports to allege the defense of immunity to suit by reason of the provision of the North Carolina Workmen's Compensation Act, G.S. 97-9. That statute reads:

> "Every employer who accepts the compensation provisions of this article shall secure the payment of compensation to his employees in the manner hereinafter provided; and while such security remains in force, he *or those conducting his business* shall only be liable to any employee who elects to come under this article for personal injury or death by accident to the extent and in the manner herein specified." (Emphasis added.)

G.S. 97-10.1 provides that if the employee and the employer are subject to and have accepted and complied with the provisions of the Act, the rights and remedies thereby granted to the employee shall exclude all other rights and remedies of the employee as against the employer.

The third further answer alleges that the Carolina Country Club is a corporation and that the plaintiff was an employee of the corporation. As above stated, the pleadings do not show the relationship of the defendant to the corporation. It is merely stated that he was "enjoying membership privileges" of the Club. Assuming this to mean that he was a member of the Club, he would not thereby be the corporation and, therefore, would not be the employer of the plaintiff. Consequently, G.S. 97-10.1 has no application to the right of the plaintiff against this defendant, and G.S. 97-9 confers no immunity upon this defendant unless he was "conducting" the business of the Carolina Country Club when playing golf upon its course.

While in *Essick v. Lexington,* 232 N.C. 200, 60 S.E. 2d 106, this Court held that this statutory provision conferring immunity to suit should be liberally construed, the Court in that case went no further than to hold that the treasurer of a corporate employer and the superintendent of its plant were persons conducting its business within the meaning of this statute. In *Warner v. Leder,* 234 N.C. 727, 69 S.E. 2d 6, Denny, J., later C.J., speaking for the Court, said:

> "We hold that an officer or agent of a corporation who is acting within the scope of his authority for and on behalf of the corporation, and whose acts are such as to render the corporation liable therefor, is among those conducting the business of the corporation, within the purview of G.S. 97-9, and entitled to the immunity it gives; [citations omitted] and that the provision

in G.S. 97-10 [now G.S. 97-10.1] which gives the injured employee or his personal representative 'a right to recover damages for such injury, loss of service, or death from any person other than the employer,' means any other person or party who is a stranger to the employment but whose negligence contributed to the injury. * * * The Legislature never intended that officers, agents, and employees conducting the business of the employer, should so underwrite this economic loss."

In *Weaver v. Bennett,* 259 N.C. 16, 129 S.E. 2d 610, and in *Lewis v. Barnhill,* 267 N.C. 457, 148 S.E. 2d 536, we held that the immunity granted by this statute does not extend to an independent contractor, or to the employees of such independent contractor, engaged in work upon the premises of the employer of the injured plaintiff. It would surely follow that the immunity would not extend to a mere patron of the employer's business, even though such patron be also a stockholder, or otherwise a member, of the corporation which owns the business and employs the injured plaintiff.

It follows that neither the second further answer nor the third further answer states facts which, if proved, would constitute a defense to the cause of action alleged in the complaint. The motion to strike should, therefore, have been sustained as to each of these further answers. The matter is, therefore, remanded to the superior court for the entry of an order sustaining the motion to strike from the answer filed by the defendant these portions of it.

Reversed and remanded.